## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. |
| | ) | |
| **MICHIGAN STATE UNIVERSITY;** | ) | |
| **THE BOARD OF TRUSTEES OF** | ) | **COMPLAINT AND JURY** |
| **MICHIGAN STATE UNIVERSITY;** | ) | **DEMAND** |
| **LAWRENCE GERARD NASSAR** | ) | |
| **(individual and official capacity)** | ) | |
| | ) | |
| **Defendant.** | ) | |

Kathleen T. Zellner
Douglas H. Johnson
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: 630-955-1212
Fax: 630-955-1111
Email: attorneys@zellnerlawoffices.com

1

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, by and through her attorneys, Kathleen T. Zellner and Douglas H. Johnson of Kathleen T. Zellner & Associates, P.C., and hereby alleges and states as follows:

### PRELIMINARY STATEMENT AND INTRODUCTION

1.  This is action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff Jane Doe as a result of the acts, conduct and omissions of Lawrence Nassar, D.O. ("Defendant Nassar"), Michigan State University ("MSU"), The Board of Trustees of Michigan State University ("MSU Trustees") and their respective employees, representatives, and agents, relating to sexual assault, abuse molestation, nonconsensual sexual touching, and harassment by Defendant Nassar against Plaintiff.

2.  Plaintiff was a young athlete attending MSU on a full-tuition athletic scholarship from 1994 through 1999, pursuant to her track and cross-country prowess.

3.  Defendant Nassar came highly recommended by the MSU athletic department, specifically by the track and cross-country coaches and athletic trainers, to Plaintiff as an "Olympic doctor and knew what he was doing." Defendant Nassar was the designated team physician for the men and women's track and field teams, which included the cross-country athletes. Plaintiff, by her coaches and athletic trainers, was directed to receive treatment from Defendant Nassar. Plaintiff reasonably believed she was required to consult and receive

2

treatment from Defendant Nassar because she reasonably believed that if she refused to do so, she would lose her scholarship.  Plaintiff did not have the means and financial resources to pay for her education without the athletic scholarship.

4.      Plaintiff had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.      From approximately 1996 to 2016, Defendant Nassar worked for MSU in various positions and capacities.

6.      For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU.

7.      From 1997 through 1999, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiff by nonconsensual sexual touching, vaginal penetration, and harassment. The digital vaginal penetration was performed without the use of gloves or lubricant.

8.      There can be no doubt that Defendant Nassar consulted, treated, sexually assaulted, and abused Plaintiff, as described in ¶ 7, because Plaintiff has obtained the medical records documenting her appointments and treatment with Defendant Nassar.

9.      Plaintiff was seeking treatment for athletic injuries, including but not limited to aches, severe pains, and hamstring injuries.

10.     The assaults were perpetrated at the MSU Sports Medicine Clinic.

11.     Plaintiff was approximately 20 years old when the assaults started and 22 years old when she was last directed by her coaches and athletic trainers to seek medical care from Defendant Nassar.

12.     Plaintiff fell into the age group of the majority of victims Defendant Nassar abused, as the age group of many of the victims was ages 9 to 29.

13.     Defendant Nassar carried out the abuse of Plaintiff and others without fully explaining the "treatment" or obtaining consent of Plaintiff or other victims to these treatments.

14.     All of Defendant Nassar's acts against Plaintiff were conducted under the guise of providing medical care at his office at Michigan State University while he abused other victims there and at other entities.

15.     The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiff robbed Plaintiff and others of their opportunity to reject the "treatment."

16.     Defendant Nassar used his position of trust and confidence in an abusive manner, causing Plaintiff to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

17.     In September 2016, a story was published regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse."

18.    Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse.

19.    Plaintiff and other victims have been forced to relive the trauma of the sexual assaults.

20.    As early as 1997, or even before, representatives of MSU were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of victims through approximately 2016.

21.    Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiff and other victims was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 42 U.S. C. § I 983, as well as other Federal and State laws.

22.    MSU's failure to properly supervise Defendant Nassar and its negligence in retaining Defendant Nassar were in violation of Michigan common law.

23.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on 3 charges of first-degree criminal sexual conduct with a person under 13.

24.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

5

25.     The acts, conduct, and omissions of MSU and its policies, customs, and practices, with respect to investigating sexual assault allegations, severely compromised the safety and health of Plaintiff and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiff and others by Defendant Nassar, which has been devastating for Plaintiff and her family.

26.     This action arises from MSU's and the other Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## JURISDICITON AND VENUE

27.     This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. 1681, et seq., as more fully set forth herein.

28.     This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. 1983.

29.     Subject matter jurisdiction is founded upon 28 U.S.C. 1331 which gives district courts jurisdiction over all civil actions arising under the constitution, laws, and treaties of the United States.

30.     Subject matter jurisdiction is also founded upon 28 U.S.C. 1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any state law,

statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of congress providing for equal right of citizens or of all persons within the jurisdiction of the United States, and any civil action to recover damages or to secure equitable relief under any act of congress providing for the protection of civil rights.

31.    Plaintiff further invokes the supplemental jurisdiction of the court, pursuant to 28 U.S.C. 1367(a), to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this court that they form part of the same case or controversy.

32.    The claims are cognizable under the United States Constitution, 42 U.S.C. 1983, 20 U.S.C. 1681 et seq., and under Michigan Law.

33.    The events giving rise to this lawsuit occurred in Ingham County, Michigan, which sits in the Southern Division of the Western District of Michigan.

34.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

## PARTIES AND KEY INDIVIDUALS

35.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

36.    Plaintiff is a female and is currently a resident of Illinois but resided in Michigan at all relevant times as indicated below.

37.    Defendant Nassar is a Doctor of Osteopathic Medicine and was a resident of Michigan at all relevant times.

38.    Defendant MSU was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

39.    Defendant MSU receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 (a).

40.    Defendant The Board of Trustees of Michigan State University (hereinafter, "MSU Trustees") is the governing body for Michigan State University.

41.    Defendant MSU and Defendant MSU Trustees are hereinafter collectively referred to as the MSU Defendants.

42.    Lou Anna K. Simon was the President of Defendant MSU until January 2018, and she had been appointed in approximately January 2005. Prior to her appointment as President, Defendant Simon held several administrative roles, including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

43.    M. Peter McPherson served as President from approximately 1993 to 2004.

44.    William D. Strampel, D.O. was the Dean of the College of Osteopathic Medicine at MSU, serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002.

45.    Douglas Dietzel, D.O. ("Dr. Dietzel") was a supervising physician at the MSU Sports Medicine Clinic at all relevant times alleged by Plaintiff. Dr.

8

Dietzel treated Plaintiff during the treatments that she was receiving from Defendant Nassar.

46.     Kathie Klages ("Klages") was MSU's head gymnastics coach in 1998.

47.     Destiny Teachmor-Hauk was an athletic trainer at MSU from 1999 to the present.

48.     Lianna Hadden was an athletic trainer at MSU from 1997 to the present.

49.     Kelli Bert ("Ms. Bert") was an assistant coach of the MSU track and cross-country team at all relevant times alleged by Plaintiff. The athletic trainers reported directly to Ms. Bert, and the athletic trainers are referenced in Plaintiff's medical records.

50.     Jeffrey R. Kovan, D.O. was the Director of Division of Sports Medicine at MSU.

51.     At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing, Michigan.

52.     At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

53.     At all relevant times, including the years of 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

54.    Defendant Nassar graduated from MSU with a Doctor of Osteopathic Medicine degree in approximately 1993.

55.    Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions, including but not limited to:

> A. Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;
>
> B. Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;
>
> C. Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;
>
> D. Team Physician, Defendant MSU's Men's and Women's Crew Team;
>
> E. Team Physician, Defendant MSU's Intercollegiate Athletics;
>
> F. Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;
>
> G. Advisor, Student Osteopathic Association of Sports Medicine.

56.    As a physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

57.    Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

58.    While employed by Defendant MSU, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

59.    During his employment, agency, and representation with the MSU Defendants, Defendant Nassar sexually assaulted, abused, and molested Plaintiff by engaging in nonconsensual sexual touching, assault, and harassment, including but not limited to digital vaginal penetration.

60.    The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.

61.    Defendant Nassar began his reign of terror at MSU in 1990 to 1991 as a student when he molested a minor using the same deceptive "treatments" of sports injuries with an intravaginal massage. After Defendant Nassar joined the faculty of MSU's College of Osteopathic Medicine in 1996 and began treating athletes and patients at the MSU sports medicine clinic, which was open to the public, Defendant Nassar used his prominence, his support by numerous individuals and entities associated with MSU, and his position of authority as a medical professional to abuse victims without any reasonable supervision by MSU.

62.    In 1997, 2 gymnasts involved in an MSU Junior Gymnastics program run by Klages, the head gymnastics coach for MSU, reported to Klages that Defendant Nassar was penetrating their vaginas with his fingers while treating them for sports injuries. Klages attempted to convince these athletes that they were "misunderstanding a medical technique," and to otherwise impede their reports of sexual misconduct against Defendant Nassar. MSU failed to take any action in

11

response to their complaints. Klages was suspended in February of 2017 after requesting her team to sign a sympathy card for Defendant Nassar.

63.   In 1998, another athlete was sexually assaulted by Defendant Nassar when she was 16 and receiving treatment at the MSU Sports Medicine Clinic for sports-related injuries.

64.   In 1999, a teammate of Plaintiff had a conversation with Plaintiff about the inappropriate treatment that was being provided to her by Defendant Nassar and confirmed that Plaintiff had received similar inappropriate treatment. The teammate reported that Defendant Nassar "was penetrating her vagina during treatment for an injured hamstring," and Plaintiff believes that the teammate also confirmed that Plaintiff was being similarly abused by Defendant Nassar.

65.   In 1999 and 2000, Jane T.T. Doe, an MSU softball player, was digitally penetrated by Defendant Nassar during treatment, and a female athletic trainer was in the room. The trainer assured Jane T.T. Doe that "this is what he was supposed to be doing, and this was going to help me to play pain free." In 2000, Jane T.T. Doe again reported the sexual abuse to a new athletic trainer and to another member of the athletic training department. She was told she could file a complaint against Defendant Nassar, but she was encouraged not to and was reminded that Defendant Nassar was a "world-renowned doctor who treated elite athletes." Yet again, MSU failed to take any action in response to Jane T.T. Doe's complaints. The specific allegations made by Jane T.T. Doe are as follows:

> Plaintiff is informed and believes, and on that basis alleges, that Defendants knew or should have known that Defendant Nassar had

engaged in unlawful sexually-related conduct in the past, and/ or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiff, her parents and others, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff. Specifically, the Defendant MSU knew that Nassar was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females, based on the following:

a. That victim, approximately 18 years old at the time, had a visit with Nassar where he touched her vagina, in order to purportedly heal back pain she was having, under the guise of legitimate medical treatment. That victim complained to a trainer on her softball team who responded by saying that Nassar was a world renowned doctor, and that it was legitimate medical treatment. The victim continued with the purported treatment;

b. As the purported treatments continued, Defendant Nassar became more bold, having that victim remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. That victim, again, reported to Defendant MSU training staff, this time a higher ranking trainer. This trainer told that victim that the treatment sounded unusual and that the victim needed to speak to an even higher level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

c. When that victim went to see this individual, the victim was told by that individual that what happened to the victim was not sexual abuse, that Nassar was a world renowned doctor, and that the victim was not to discuss what happened with Nassar and was to continue seeing him for purported treatment. The victim continued to see Nassar for treatment;

d. Finally, in or around 2001, that victim refused to continue to see Nassar for these abusive and invasive procedures. Defendant MSU then pressured and coerced that victim to declare herself medically inactive. The victim was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.

e. Despite her complaints to MSU employees, agents, and representatives, that victim's concerns and allegations went unaddressed in violation of reporting policies and procedures, Title IX, and in a manner that was reckless, deliberately indifferent, and grossly negligent.

66. Because MSU took no action to stop Defendant Nassar's abuse from 1997 to 1999, Plaintiff became one of his victims. The similar abuse of others by nonconsensual penetration, nonconsensual touching of the vaginal area without the use of gloves or lubricant, and by nonconsensual touching by Defendant Nassar continued up until 2016.

67. In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015, the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.

68. The OCR concluded their investigation in 2015 and presented Defendant MSU with a 21-page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.

69. Plaintiff was made aware of Defendant Nassar's widespread sexual abuse on or around September 12, 2016, or shortly thereafter, through related media coverage.

14

70.    Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016, only after the MSU Defendants became aware that:

    A. Defendant Nassar was sued by a former Olympian, who alleged she was sexually assaulted by Defendant Nassar; and

    B. A former patient of Defendant Nassar filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. That victim's allegations of sexual assault by Defendant Nassar included but were not limited to:

        a. Massaging her genitals;

        b. Penetrating her vagina and anus with his finger and thumb; and

        c. Unhooking her bra and massaging her breasts.

71.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on 3 charges of first-degree criminal sexual conduct with a person under 13 and was later released on $1 million bond.

72.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

73.    According to the federal indictment, Defendant Nassar:

    A. Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

    B. Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016, including images involving a minor who had not attained 12 years of age.

74.    Plaintiff has since been convicted of multiple sexually-related crimes and has been sentenced to what will be equivalent to a life sentence.

## SPECIFIC FACTUAL ALLEGATIONS

75.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

76.    Plaintiff was treated by Defendant Nassar from 1997 through 1999 as a student athlete at MSU.

77.    Plaintiff was presented to Defendant Nassar with complaints of pain in her hamstring caused by track and field.

78.    Plaintiff was referred to Defendant Nassar by MSU coaches, athletic, trainers, and other staff.

79.    Plaintiff reasonably believed she was required to undergo "treatment" by Defendant Nassar, as she attended MSU on a scholarship and would lose that scholarship if she refused treatment by Defendant Nassar.

80.    On several occasions at appointments at his office at MSU, Defendant Nassar digitally penetrated Plaintiff's vagina without Plaintiff's consent, prior notice, and without wearing gloves or using lubricant.

81.    Defendant Nassar used his un-gloved hand to stimulate Plaintiff's vagina before digitally penetrating her vagina.

82.    On approximately 7 occasions, from 1997 through 1999, as documented in the medical records, Defendant Nassar made entries in Plaintiff's medical record that he performed "myofascial reconstruction," "obtrude internus," referenced

16

examination of the "pubis symphysis" and cervical area, and other unauthorized medical procedures, which placed MSU Defendants on notice that Plaintiff was being assaulted, abused, and otherwise victimized by Defendant Nassar's criminal actions.

83.    Despite notice of Defendant Nassar's sexual abuse of Plaintiff as early as 1997, such that MSU trainers, coaches who were employees, representatives, and agents of MSU, and other physicians, had a duty to report allegations of sexual assault and abuse about Defendant Nassar's conduct. Furthermore, those individuals misled and misrepresented to Plaintiff that Defendant Nassar's treatments were appropriate because he was an "Olympic doctor" who "knew what he was doing."

84.    It is believed that no investigation was initiated despite complaints to MSU representatives, nor was any corrective action taken, exposing Plaintiff and others to continued sexual assaults and sexual abuse.

85.    Defendant Nassar did not explain his conduct disguised as "treatment" as a medical procedure to Plaintiff.

86.    Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff.

87.    Plaintiff did not consent to OB/GYN treatment by Defendant Nassar explicitly or implicitly.

88.    Plaintiff believes the conduct by Defendant Nassar was sexual assault, abuse, and molestation and for Defendant Nassar's pleasure and self-gratification,

as she observed that he achieved an erection on more than one occasion during his "treatment" of her.

## CLAIMS AGAINST MSU DEFENDANTS

### COUNT ONE

### VIOLATIONS OF TITLE IX

### 20 U.S.C. §1681(a), *et seq.*

### DEFENDANTS MSU, MSU TRUSTEES

89.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

90.     Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be...subject to discrimination under any education program or activity receiving Federal financial assistance..."

91.     Plaintiff is a "person" under the Title IX statutory language.

92.     Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681(a), *et seq.*

93.     Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

94.     The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school and extends to sexual harassment and assault by employees, students, and third parties.

18

95.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment to students, athletes, and the public.

96.    Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual digital vaginal penetration, touching of Plaintiff's vaginal area, and touching of additional areas of Plaintiff's body contrary to her medical presentation, constitutes sex discrimination under Title IX.

97.    As early as 1997, or before, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar.

98.    Specifically, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation by one of Defendant Nassar's victims in or around 1997, or before, on more than one occasion.

99.    The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following Jane X. Doe and Jane T.T. Doe's complaints of sexual assault, abuse, and molestation in or around 1999, or before and thereafter.

100.    The MSU Defendants acted with deliberate indifference as their lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, Defendant Nassar's actions with female athletes, and his access to young girls and young women.

101.   The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

    A. A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

    B. That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.

102.   The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes and other individuals until he was discharged from the University in 2016.

103.   Between the dates of Defendant Nassar's employment with MSU, from approximately 1996 to 2016, the MSU Defendants acted in a deliberate, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiff on and off school premises.

104.   The MSU Defendants' failure to promptly and appropriately investigate, remedy, and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying her access to educational opportunities at MSU, including medical care.

105.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff has suffered and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT TWO
## VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983
## DEFENDANTS MSU, MSU TRUSTEES, DEFENDANT NASSAR

106.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

107.   Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

108.   Plaintiff enjoys the constitutionally-protected Due Process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation.

109.   At all relevant times, Defendants MSU, MSU Trustees, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

21

110.   The acts, as alleged above, amount to a violation of these clearly-established, constitutionally-protected rights, of which reasonable persons in the MSU Defendants' positions should have known.

111.   The MSU Defendants have the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation as a matter of acts, custom, policy, and/or practice. They failed to do so with deliberate indifference.

112.   As a matter of custom, policy, and and/or practice, the MSU Defendants had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, visitors, faculty, staff, other employees, agents, and/or representatives. They failed to do so with deliberate indifference.

113.   The MSU Defendants had a duty to prevent sexual assault, abuse, and molestation on their campus and premises, that duty arising under the above-referenced constitutional rights, as well as established rights pursuant to Title IX.

114.   Defendant MSU's internal policies provide that "[a]ll University employees…are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all

relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event…"

115.    Defendant MSU's aforementioned internal policies were violated in or around 1997, or earlier, when at least one victim reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives, including trainers and a coach, and no action was taken to address the victim's complaints.

116.    Defendant MSU's aforementioned internal policies were violated subsequently when additional victims reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives, including trainers, and no action was taken to address their complaints.

117.    The MSU Defendants' failure to address the aforementioned victims' complaints led to an unknown number of individuals being victimized, sexually assaulted, abused, and molested by Defendant Nassar.

118.    Ultimately, Defendants failed to adequately and properly investigate the complaints of victims or other similarly-situated individuals, including but not limited to:

> A.    Perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiff after receiving complaints in 1997 or earlier;
>
> B.    Thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the conduct of Defendant Nassar.

119.    As indicated in the U.S. Department of Education Office of Civil Rights report, the MSU Defendants had a culture that permitted a sexually hostile

environment to exist, affecting numerous individuals on Defendant MSU's campus, dr to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable that it amounted to deliberate indifference, the MSU Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

120.   The MSU Defendants are also liable to Plaintiff under 42 U.S.C. §1983 for maintaining customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

121.   The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

122.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT THREE

## FAILURE TO TRAIN AND SUPERVISE

## 42 U.S.C. § 1 983

## DEFENDANTS MSU, MSU TRUSTEES

123.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

124.   The MSU Defendants have the ultimate responsibility and authority to train and supervise its employees, agents, and/or representatives, including Defendant Nassar and all faculty and staff regarding their duties toward students, faculty, staff, and visitors.

125.   The MSU Defendants failed to train and supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following duties:

      A. Perceive, report, and stop inappropriate sexual conduct on campus;

      B. Provide diligent supervision over student-athletes and other individuals;

      C. Report suspected incidents of sexual abuse or sexual assault;

      D. Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses' premises;

      E. Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

      F. Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

126.   The above list of duties is not exhaustive.

25

127.   The MSU Defendants failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff's rights.

128.   As a result, the MSU Defendants deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

129.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT FOUR
## GROSS NEGLIGENCE
## DEFENDANTS MSU, MSU TRUSTEES, AND DEFENDANT NASSAR

130.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

131.   The MSU Defendants owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while

interacting with their employees, representatives, and/or agents, including Defendant Nassar.

132.   Defendant Nassar owed Plaintiff a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

133.   By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

134.   The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments," was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

135.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

136.   The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

137.   The MSU Defendants' conduct, as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

138.   The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

139.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT FIVE
## NEGLIGENCE
### DEFENDANTS MSU, MSU TRUSTEES, AND DEFENDANT NASSAR

140.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

28

141.    The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

142.    By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

143.    Defendant Nassar owed Plaintiff a duty of ordinary care.

144.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

145.    The MSU Defendants had notice through its own employees, agents, and/or representatives in 1997, or even earlier, of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

146.    The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

147.    The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

148.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

29

149.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT SIX**

**VICARIOUS LIABILITY**

**DEFENDANTS MSU AND MSU TRUSTEES**

150.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

151.   Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

152.   Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

153.   The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

154.   Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.

155.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar, as described above, that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

156.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

COUNT SEVEN

EXPRESS/IMPLIED AGENCY

DEFENDANTS MSU AND MSU TRUSTEEES

157.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

158.   An agent is a person who is authorized by another to act on its behalf.

31

159.   The   MSU   Defendants   intentionally   or   negligently   made representations that Defendant Nassar was their employee, agent, and/or representative.

160.   On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

161.   Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation, as described above, which were acts performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

162.   Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and/or representatives who would exercise reasonable skill and care.

163.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT EIGHT
## NEGLIGENT SUPERVISION
## DEFENDANTS MSU AND MSU TRUSTEES

164.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

165.    The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiff.

166.    The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiff.

167.    The aforementioned sexual abuse occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his employment, agency, and/or representation of the MSU Defendants.

168.    The MSU Defendants tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision, and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiff with impunity.

169.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT NINE
## NEGLIGENT FAILURE TO WARN OR PROTECT
## DEFENDANTS MSU AND MSU TRUSTEES

170.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

171.   The MSU Defendants knew, or should have known, that Defendant Nassar posed a risk of harm to Plaintiff and those in Plaintiff's situation.

172.   As early as 1997, or even earlier, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

173.   The MSU Defendants knew, or should have known, that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

174.   The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

175.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, as an employee, agent, and or representative of the MSU Defendants, and Plaintiff.

176.   The MSU Defendants breached said duty by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

177.   The MSU Defendants breached its duties to protect Plaintiff by failing to:

      A. Respond to allegations of sexual assault, abuse, and molestation;

      B. Detect, and/or uncover evidence of sexual assault, abuse, and molestation; and

      C. Investigate, adjudicate, and terminate Defendant Nassar's employment.

178.   The MSU Defendants failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiff's rights.

179.   The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

180.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and

will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT TEN**

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**

**DEFENDANTS MSU AND MSU TRUSTEES**

181.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

182.   The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiff from the risk of sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiff and other individuals about how to avoid such a risk.

183.   The MSU Defendants failed to implement reasonable safeguards to:

A. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

B. Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiff and other young athletes.

184.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and

36

will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT ELEVEN**

**NEGLIGENT RETENTION**

**DEFENDANTS MSU AND MSU TRUSTEES**

185.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

186.    The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representatives to exercise due care, but they failed to do so.

187.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

188.    The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative after they discovered, or reasonably should have discovered, Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

189.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to, sexually abusing, and/or sexually assaulting Plaintiff and an unknown number of other individuals.

190.    The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff.

191.    As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT TWELVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## DEFENDANTS MSU AND MSU TRUSTEES

192.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

193.    The MSU Defendants allowed Defendant Nassar to be in a position where he could sexually assault, abuse, and molest young female athletes.

194.   A reasonable person would not expect the MSU Defendants to tolerate or permit their employee or agent to carry out sexual assault, abuse, or molestation after they knew or should have known of complaints and claims of sexual assault and abuse occurring during Defendant Nassar's "treatments."

195.   The MSU Defendants held Defendant Nassar in high esteem and acclaim, which, in turn, encouraged Plaintiff and others to respect and trust Defendant Nassar and seek out his services and to not question his methods or motives.

196.   The MSU Defendants protected Defendant Nassar in part to bolster and sustain his national and international reputation in the gymnastics community.

197.   A reasonable person would not expect the MSU Defendants to be incapable of supervising Defendant Nassar and/or preventing Defendant Nassar from committing acts of sexual assault, abuse, and molestation.

198.   The MSU Defendants' conduct, as described above, was intentional and/or reckless.

199.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment

of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT THIRTEEN**

**FRAUD AND MISREPRESENTATION**

**DEFENDANTS MSU AND MSU TRUSTEES**

200.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

201.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was a competent and safe physician.

202.    By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

203.    The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiff and an unknown number of other individuals.

204.    As of 1997, or even earlier, the MSU Defendants knew that their representations of Defendant Nassar were false, as victims had complained of Defendant Nassar's conduct to MSU representatives.

205.    Although MSU was informed of Defendant Nassar's conduct, they failed to investigate, remedy, or in any way address those victims' complaints.

206.    The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

207.    Plaintiff and subsequent victims relied on the assertions of the MSU Defendants and continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

208.    Plaintiff was subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

209.    As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## DAMAGES

210.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

211.   As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiff suffered discomfort and additional medical problems, and will continue to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, and enjoyment of life, was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

212.   The conduct and actions and/or inactions of Defendants, as alleged in the above stated counts and causes of actions, constitute violations of Plaintiff's Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

213.   In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

214.   The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of $ 75,000.00.

WHEREFORE, Plaintiff requests that this Court as the finder of fact enter judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs at trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for

42

each or all of the above counts where applicable, and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary, and/or punitive damages, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

    A.  Compensatory damages, in an amount to be determined as fair and just under the circumstances by the trier of fact, including but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, embarrassment, violation of Plaintiff's Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

    B.  Punitive and/or exemplary damages in an amount to be determined as reasonable and just by the trier of fact;

    C.  Reasonable attorneys' fees, interest, and costs; and

    D.  Other declaratory, equitable, and/or injunctive relief, including but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Dated: August 29, 2018

By: /s/ Kathleen T. Zellner

Kathleen T. Zellner
Douglas H. Johnson
    Attorneys for Plaintiff

**Kathleen T. Zellner**
**Douglas H. Johnson**
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: 630-955-1212
Fax: 630-955-1111
Email: attorneys@zellnerlawoffices.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims set forth above.

Dated: August 29, 2018

By: /s/ Kathleen T. Zellner

Kathleen T. Zellner
Douglas H. Johnson
    Attorneys for Plaintiff

**Kathleen T. Zellner**
**Douglas H. Johnson**
Kathleen T. Zellner & Associates, P.C.
1901 Butterfield Road
Suite 650
Downers Grove, Illinois 60515
Phone: 630-955-1212
Fax: 630-955-1111
Email: attorneys@zellnerlawoffices.com

44